UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ACUMENTRICS CORPORATION,
    Plaintiff

v.                                 C.A. No. 04 10143 GAO

GENERAL DYNAMICS CORPORATION
and GENERAL DYNAMICS C4
SYSTEMS, INC.,
    Defendants

MAGISTRATE JUDGE Bowler

## COMPLAINT AND JURY DEMAND

### PARTIES

1. The plaintiff, Acumentrics Corporation ("Acumentrics"), is a Massachusetts corporation with a place of business at 20 Southwest Park, Westwood, Massachusetts.

2. The defendant, General Dynamics Corporation ("GD"), is a Delaware Corporation headquartered in Falls Church, Virginia with a place of business at 400 John Quincy Adams Road, Taunton, Massachusetts.

3. The defendant, General Dynamics C4 Systems, Inc. ("GDC4S"), is a Delaware Corporation with a place of business at 400 John Quincy Adams Road, Taunton, Massachusetts.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331.

5. Venue in this Court is proper pursuant to 28 U.S.C. §§1391(b) and (c).

1

## FACTS

6.  GD and GDC4S are in the business of obtaining and fulfilling contracts to provide goods and services to the United States Government. GD and GDC4S submit detailed proposals or "bids" for contracts to supply the Government with various goods and services. In these bids, GD and GDC4S identify, among other things, all subcontractors who will provide component goods or otherwise participate in fulfilling the contract that is the subject of the bid. Acumentrics has been a subcontractor of GD and GDC4S.

7.  Acumentrics manufactures power protection equipment, including a durable fuel cell or uninterrupted power supply pack ("UPS") with military applications. In its military application, the UPS is used as a portable power source for computers and other IT equipment designed to withstand the extreme environment of the battlefield. The designs and manufacturing processes for producing the Acumentrics UPS are not available to the public, are proprietary to Acumentrics and held in confidence as a trade secret. As a result of its supply agreements with Acumentrics, GD holds a complete technology escrow package comprising blue prints and manufacturing plans for the UPS product line.

8.  The Acumentrics UPS product configurations have become distinctive through years of commercial sales and have therefore acquired secondary meaning in the relevant market as an identifier of the source or sponsorship of Acumentrics' UPS products.

9. Sometime in or before 1995 the Government, pursuant to its Common Hardware/Software II program ("CHS-2"), awarded GD a contract to supply various goods, including the Acumentrics UPS.

10. From 1996 to 2002 Acumentrics sold over 6,000 UPS units to GD as a subcontractor to GD on its CHS-2 contract. On information and belief, Acumentrics was the exclusive supplier to GD for power protection equipment sold under the CHS-2 contract during this period. From 1996 to 2001 GD maintained a rolling back order of Acumentrics' UPS products. Starting in 2001, GD would place at least one high-volume blanket order with Acumentrics for its UPS products.

11. As of 2002, approximately 50% of Acumentrics' revenue from its UPS products derived from sales to GD. Acumentrics projected this figure would rise to 90% in 2003.

12. In April 2002, GD incorporated GDC4S in the state of Delaware. GDC4S registered to do business in the Commonwealth of Massachusetts on December 26, 2002. By November 2002, Acumentrics had shipped nearly all products specified in GD's last blanket order and Acumentrics began negotiating a new annual order for UPS products with GD or GDC4S.

13. As of February 2003, neither GD nor GDC4S had placed its annual order with Acumentrics even though GD knew that its orders accounted for 90% of Acumentrics' UPS revenue and that Acumentrics would be forced to commence layoffs on its UPS production line if an order were not quickly concluded. Rather than conclude the order, GD delayed by seeking concessions from Acumentrics with respect to the

terms of the order. Acumentrics responded by informing GD that Acumentrics' quote has expired and Acumentrics began layoffs from its UPS production line.

14. When Acumentrics informed GD its offer to further supply UPS products to GD had expired, GD, through GDC4S, was in the process of preparing a bid for a 10-year contract under the Government's Common Harware/Software-3 program ("CHS-3") – the follow-on to the expiring CHS-2 contract. Under the CHS-3 program, GD stood to gain a contract with an initial award of over $8,000,000 and a potential ten-year aggregate award of $2,000,000,000. Upon information and belief, GD needed to include Acumentrics as a subcontractor for UPS products in its bid because there was no suitable alternative that would meet the formal bid requirements. Accordingly, GD attempted to revive the quote process with Acumentrics. GD's actions in this regard were consistent with its prior dealings with Acumentrics. Particularly, GD placed each of its previous orders only after GD's delays forced Acumentrics to break off negotiations in the order process.

15. In response to GD's attempt to revive the quote process, Acumentrics proposed a vertical integration plan whereby GD would purchase for $11,200,000 certain of Acumentrics technology assets, including an exclusive license and certain hardware that would enable GD to manufacture the UPS product for the CHS-3 program without Acumentrics' further involvement. Acumentrics explained that this was the only option for GD to continue supplying the government with Acumentrics' rugged UPS products, because Acumentrics did not wish to undertake a long-term commitment to supply UPS products to GD. Thus, Acumentrics informed GD and GDC4S that Acumentrics could

4

be listed as a supplier in GD's bid for the CHS-3 contract only if GD completed the proposed acquisition of Acumentrics UPS product line.

16. Acumentrics continued to negotiate the vertical integration plan in good faith with GD through April 2003.

17. In April 2003, GDC4S formally submitted its bid package for the CHS-3 program. Without authorization from Acumentrics, and in direct contravention of Acumentrics' instructions, GDC4S specified Acumentrics' UPS products and part numbers in its bid for the CHS-3 program.

18. Within days after submitting its CHS-3 bid, GD broke off further negotiations with Acumentrics concerning vertical integration or further supply agreements.

19. On information and belief, when submitting its bid for the CHS-3 program, GD had no intention of negotiating in good faith concerning the proposed acquisition of Acumentrics' UPS product line but rather used those negotiations as a pretext to enable it to specify Acumentrics as a supplier of UPS products in GD's bid for the CHS-3 contract.

20. When Acumentrics learned that GD had used Acumentrics' products in its CHS-3 bid, Acumentric objected to GD's actions and demanded that GD cease and desist from using Acumentrics name or products to bid for a government contract where Acumentrics would not actually supply products under the prospective contract.

21. On June 3, 2003, GDC4S was awarded the CHS-3 contract.

22. On information and belief, neither GD nor GDC4S would have been a responsible bidder for the CHS-3 program if they were unable to include in their bid

Acumentrics as a subcontractor for UPS products. Accordingly, neither GD nor GDC4S would have been awarded the CHS-3 contract if they had not specified Acumentrics as a subcontractor and supplier of the UPS products to be offered under the program.

23. In September 2003, Acumentrics retained a merger & acquisition firm to sell its rugged-UPS technology. Because GD was to account for 90% of the sales of the UPS product line, and because GD had been awarded the CHS-3 contract, the value of the UPS product line is tied to GD's demand for UPS products.

24. In October 2003, Acumentrics discovered that GD was engaged in an internal program to manufacture and pass off equivalents of the Acumentrics' UPS products GD had specified in its bid for the CHS-3 program and that GD had no intention to purchase UPS products from a subcontractor. Accordingly, the value of Acumentrics' UPS product line has been greatly diminished by GD's improper actions.

25. Acumentrics also has discovered that GD and GDC4S now maintain a website at http://www.chs3.gdc4s.com (the "Website") advertising the products sold pursuant to the CHS-3 program contract. GD and GDC4S have caused photographs and other representations of Acumentrics' UPS products (with Acumentrics' name removed), including Acumentrics' well-known product configurations, to be featured on the Website without Acumentrics' permission.

26. GD and GDC4S's utilization of Acumentrics' product without authority in their bid for the CHS-3 program and on the Website has caused and will likely cause the government to be confused as to whether Acumentrics' is a source or sponsor of the UPS products to be provided by GD and GDC4S in fulfillment of the CHS-3 contract.

27. Upon information and belief, GD and GDC4S have misappropriated and continue to misappropriate Acumentrics' trade secrets in their internal program to manufacture and pass off equivalents of the Acumentrics' UPS products.

28. Upon information and belief, GD and GDC4S contrived to keep Acumentrics from supplying UPS products to other prospective bidders for the lucrative CHS-3 government contract and from selling the UPS product line to other prospective bidders or their subcontractors by deliberately delaying their annual order of Acumentrics' UPS products for 2003, by engaging in bad faith negotiation of a vertical integration agreement with Acumentrics, and by simultaneously using Acumentrics' product designations and product designs without Acumentrics' authorization to obtain the CHS-3 contract. By these actions GD and GDC4S effectively left Acumentrics without an adequate customer base to sustain its UPS product line and thereby also left Acumentrics without a buyer for same.

## COUNT I
### False Designation of Origin
### Lanham Act §43(a)
### (15 U.S.C. §1125(a))

29. The allegations set forth in paragraphs 1 through 28 of the Complaint are hereby incorporated by reference and made a part hereof.

30. By submitting their bid CHS-3 package specifying Acumentrics UPS product line, GD and GDC4S have used in connection with goods or services a false designation of origin, or false description or representation, including words or other symbols tending falsely to describe or represent the same, and have cause such goods or services to enter into commerce.

31. By using images of Acumentrics' well-known product configurations on their Website, GD and GDC4S is falsely advertising and passing off the Acumentrics UPS products as their own.

32. Acumentrics has suffered damages in the form of lost revenue and diminished value of its UPS product line as a result of GD and GDC4S's false designation of origin.

33. Acumentrics has suffered and will continue to suffer irreparable harm in the form of permanent loss of market share and imminent closure of its UPS product division as a result of GD and GDC4S's false designation of origin.

## COUNT II
### Trade Dress Infringement

34. The allegations set forth in paragraphs 1 through 33 of the Complaint are hereby incorporated by reference and made a part hereof.

35. Since at least 1996, Acumentrics has utilized the product configuration of its UPS products continuously in interstate commerce to identify Acumentrics as the source of its UPS products.

36. Acumentrics is the holder of all right, title and interest to the trade dress comprised of the product configuration of its UPS products.

37. The consuming public has come to associate Acumentrics' trade dress in the form of its UPS product configuration with Acumentrics.

38. GD and GDC4S's recent use of photographs of Acumentrics' UPS products on its Website is likely to cause confusion or mistake or to deceive as to the source or origin of GD and GDC4S's goods and services. As such, GD and GDC4S's

use of Acumentrics' UPS product configurations infringes upon Acumentrics' trade dress.

39. Acumentrics has no adequate remedy at law.

## COUNT III
### Misappropriation of Trade Secrets

40. The allegations set forth in paragraphs 1 through 39 of the Complaint are hereby incorporated by reference and made a part hereof.

41. The product design and manufacturing process used to produce Acumentrics UPS product line (the Trade Secrets) are not available to the public, are proprietary to Acumentrics and Acumentrics takes extensive measures to maintain these Trade Secrets in confidence.

42. Acumentrics derives competitive advantage from the Trade Secrets.

43. As a result of its supply relationship with Acumentrics, GD has gained access to the Trade Secrets and is bound to maintain the Trade Secrets in confidence and not to practice or use the Trade Secrets without permission from Acumentrics.

44. Upon information and belief, GD and GDC4S have misappropriated and continue to misappropriate Acumentrics' Trade Secrets their internal program to manufacture and pass off equivalents of the Acumentrics' UPS products.

45. Acumentrics has suffered damages in the form of lost revenue and diminished value of its UPS product line as a result of GD and GDC4S's misappropriation of Acumentrics' Trade Secrets.

46. Acumentrics has suffered and will continue to suffer irreparable harm in the form of permanent loss of market share and imminent closure of its UPS product division as a result of GD and GDC4S's misappropriation of Acumentrics' Trade Secrets.

## COUNT IV
### Common Law Unfair Competition

47. The allegations set forth in paragraphs 1 through 46 of the Complaint are hereby incorporated by reference and made a part hereof.

48. GD & GDC4S' actions in using Acumentrics' products in its bid for the CHS-3 contract and in falsely advertising Acumentrics' products on its Website constitute unfair competition at common law.

49. Acumentrics has suffered damages in the form of lost revenue and diminished value of its UPS product line as a result of GD and GDC4S's common law unfair competition.

50. Acumentrics has suffered and will continue to suffer irreparable harm in the form of permanent loss of market share and imminent closure of its UPS product division as a result of GD and GDC4S's common law unfair competition.

## COUNT V
### Unfair Competition and Deceptive Trade Practices
### (M.G.L. ch. 93A)

51. The allegations set forth in paragraphs 1 through 50 of the Complaint are hereby incorporated by reference and made a part hereof.

52. The totality of GD and GDC4S's actions constitute unfair or deceptive acts in the conduct of trade or commerce in violation of M.G.L..ch. 93A §§ 2(a) and 11.

53. GD and GDC4S committed such unfair or deceptive acts willfully and knowingly;

54. GD and GDC4S's actions occurred and/or had their primary impact substantially and primarily within the Commonwealth of Massachusetts.

55. Acumentrics has suffered damages in the form of lost revenue and diminished value of its UPS product line as a result of GD and GDC4S's unfair and descriptive trade practices.

56. Acumentrics has suffered and will continue to suffer irreparable harm in the form of permanent loss of market share and imminent closure of its UPS product division as a result of GD and GDC4S's unfair and descriptive trade practices.

WHEREFORE, plaintiff Acumentrics Corporation, hereby requests that this Honorable Court:

1. Enter Judgment in favor of the plaintiff and against the defendants on Counts I through V of the Complaint;

2. Enter a preliminary injunction:

    a. Prohibiting GD and GDC4S from producing and selling Acumentrics' UPS products,

    b. Prohibiting GD and GDC4S from misappropriating Acumentrics' trade secrets in its UPS products design, including blue prints and manufacturing processes, and

    c. Prohibiting GD and GDC4S from using Acumentrics' trademarks and distinctive product designs in commerce, or falsely designating the origin of products offered by GD or GDC4S as those of Acumentrics or using Acumentrics' trademarks or product configurations in any other way that may tend to injure the goodwill of Acumentrics;

3. Enter a permanent injunction:

    a. Prohibiting GD and GDC4S from producing and selling Acumentrics' UPS products,

    b. Prohibiting GD and GDC4S from misappropriating Acumentrics' trade secrets in its UPS products design, including blue prints and manufacturing processes, and

    c. Prohibiting GD and GDC4S from using Acumentrics' trademarks and distinctive product designs in commerce, or falsely designating the origin of products offered by GD or GDC4S as those of Acumentrics or using Acumentrics' trademarks or product configurations in any other way that may tend to injure the goodwill of Acumentrics;

4. Award the plaintiff its damages, including multiple damages pursuant to M.G.L. c. 93A;

5. Order the defendants to disgorge all profits the defendants have gained as a result of the activities alleged herein;

6. Award the plaintiff its costs, interest, and attorneys' fees; and

7. Award the plaintiff such other relief as the Court deems just.

**JURY DEMAND**

## JURY DEMAND

Plaintiff, Acumentrics Corporation, demands a trial by jury on all issues so triable.

Respectfully submitted,

ACUMENTRICS CORPORATION
By its attorneys,

*/s/ Thomas E. Kenney*

Robert R. Pierce
BBO#549172
Christopher D. Engebretson
BBO#635636
Thomas E. Kenney
BBO#561590
Pierce & Mandell, P.C.
11 Beacon Street
Suite 800
Boston, MA 02108
(617) 720-2444

January 20, 2004