UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

ACUMENTRICS CORPORATION,

    Plaintiff,

    v.

GENERAL DYNAMICS CORPORATION
and GENERAL DYNAMICS C4 SYSTEMS,
INC.,

    Defendants.

Civil Action No. 04-10143-GAO

---

## ANSWER OF GENERAL DYNAMICS CORPORATION AND GENERAL DYNAMICS C4 SYSTEMS, INC. AND COUNTERCLAIMS OF GENERAL DYNAMICS C4 SYSTEMS, INC.

Defendants General Dynamics Corporation ("GD Corporation") and General Dynamics C4 Systems, Inc. ("C4 Systems") in the above-captioned action hereby answer the allegations contained in the Complaint and Jury Demand of plaintiff Acumentrics Corporation ("Acumentrics" or "plaintiff"). C4 Systems also asserts counterclaims against Acumentrics.

### I. ANSWER

GD Corporation and C4 Systems hereby answer the allegations contained in the numbered Paragraphs of the Complaint of Acumentrics as follows:

### PARTIES

1.    GD Corporation and C4 Systems are without sufficient knowledge or information either to admit or deny the allegations set forth in Paragraph 1 of the Complaint.

2.    GD Corporation admits that it has a place of business at 400 John Quincy Adams Road in Taunton, Massachusetts, to the extent that GD Corporation is a parent corporation of

16.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 16 of the Complaint.

17.    GD Corporation and C4 Systems admit the allegations set forth in the first sentence of Paragraph 17 of the Complaint. GD Corporation and C4 Systems deny the remaining allegations set forth in Paragraph 17 of the Complaint.

18.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 18 of the Complaint.

19.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 19 of the Complaint.

20.    GD Corporation and C4 Systems admit that after C4 Systems submitted its bid for the CHS-3 project, Acumentrics contacted C4 Systems to demand that neither Acumentrics' name or products be included in the CHS-3 bid. GD Corporation and C4 Systems deny the remaining allegations set forth in Paragraph 20 of the Complaint.

21.    GD Corporation and C4 Systems admit that C4 Systems was awarded the CHS-3 contract on May 31, 2003. GD Corporation and C4 Systems deny the remaining allegations set forth in Paragraph 21 of the Complaint.

22.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 22 of the Complaint.

23.    GD Corporation and C4 Systems are without sufficient knowledge or information either to admit or deny the allegations set forth in the first sentence of Paragraph 23 of the Complaint. GD Corporation and C4 Systems deny the remaining allegations set forth in Paragraph 23 of the Complaint.

24.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 24 of the Complaint.

25.    GD Corporation and C4 Systems admit that as of the date of the Complaint, C4 Systems maintained a website depicting products offered for sale under the CHS-3 program contract, including UPS products.  GD Corporation and C4 Systems deny the remaining allegations set forth in Paragraph 25 of the Complaint.

26.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 26 of the Complaint.

27.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 27 of the Complaint.

28.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 28 of the Complaint.

COUNT I
FALSE DESIGNATION OF ORIGIN
LANHAM ACTS § 43(a) (15 U.S.C. § 1125(a))

29.    GD Corporation and C4 Systems incorporate their responses to Paragraphs 1 through 28 above as though fully set forth herein.

30.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 30 of the Complaint.

31.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 31 of the Complaint.

32.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 32 of the Complaint.

33.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 33 of the Complaint.

## COUNT II
## TRADE DRESS INFRINGEMENT

34.    GD Corporation and C4 Systems incorporate their responses to Paragraphs 1 through 33 above as though fully set forth herein.

35.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 35 of the Complaint.

36.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 36 of the Complaint.

37.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 37 of the Complaint.

38.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 38 of the Complaint.

39.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 39 of the Complaint.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS

40.    GD Corporation and C4 Systems incorporate their responses to Paragraphs 1 through 39 above as though fully set forth herein.

41.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 41 of the Complaint.

42.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 42 of the Complaint.

43.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 43 of the Complaint.

44.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 44 of the Complaint.

45.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 45 of the Complaint.

46.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 46 of the Complaint.

COUNT IV
COMMON LAW UNFAIR COMPETITION

47.    GD Corporation and C4 Systems incorporate their responses to Paragraphs 1 through 46 above as though fully set forth herein.

48.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 48 of the Complaint.

49.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 49 of the Complaint.

50.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 50 of the Complaint.

COUNT V
UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES
(M.G.L. ch. 93A)

51.    GD Corporation and C4 Systems incorporate their responses to Paragraphs 1 through 50 above as though fully set forth herein.

52.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 52 of the Complaint.

53.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 53 of the Complaint.

54.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 54 of the Complaint.

55.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 55 of the Complaint.

56.    GD Corporation and C4 Systems deny the allegations set forth in Paragraph 56 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statutes of limitations.

### THIRD AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by its own acts, omissions and/or course of conduct.

### FOURTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by its failure to mitigate its damages.

### FIFTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the doctrines of waiver, estoppel, laches and/or unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

If Plaintiff was injured as alleged, which is denied, Plaintiff's injuries were in no way caused by any conduct of Defendants or any person acting with, through, or under Defendants, or by any person for whose conduct Defendants are legally responsible or answerable, and Plaintiff can recover nothing therefor.

## SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff was injured as alleged, which is denied, its injuries were caused in whole or in part by its own willful misconduct and Plaintiff can recover nothing therefor.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by Defendants' compliance with applicable standards, statutes and regulations.

## NINTH AFFIRMATIVE DEFENSE

GD Corporation was not a party to business dealings or contracts referred to by Plaintiff, and therefore Plaintiff's claims fail.

## TENTH AFFIRMATIVE DEFENSE

GD Corporation and Plaintiff lack privity of contract, and therefore Plaintiff's claims fail.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's product designs are functional, and therefore Plaintiff's claims fail.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants reserve the right to add such other and further defenses as become apparent during the course of discovery.

## II. **COUNTERCLAIMS**

Defendant General Dynamics C4 Systems, Inc. ("C4 Systems") asserts counterclaims against Plaintiff Acumentrics Corporation ("Acumentrics"), as follows:

### Parties

1.     C4 Systems is a Delaware Corporation with a place of business located at 400 John Quincy Adams Road, Taunton, Massachusetts.

2.    Upon information and belief, Acumentrics is a Massachusetts corporation with a place of business at 20 Southwest Park, Westwood, Massachusetts.

<u>Facts</u>

3.    C4 Systems' counterclaims against Acumentrics arise, in part, out of the subject matter and circumstances surrounding the allegations contained in the Complaint of Acumentrics.

<u>Breach of CHS-2 Contract Obligations</u>

4.    In April 1995, the United States Government awarded C4 Systems' predecessor in interest, GTE Government Systems Corporation ("GTE Government Systems"), the Common Hardware / Software 2 Contract ("CHS-2"). Pursuant to the CHS-2 contract, GTE Government Systems agreed to provide the United States Government with a wide variety of computer-related products, including Uninterruptible Power Supply ("UPS") products.

5.    In or around October 1995, GTE Government Systems entered into an agreement with Acumentrics whereby Acumentrics agreed to supply GTE Government Systems with products pursuant to the CHS-2 program, including UPS products.

6.    On or about August 15, 1997, GTE and Acumentrics executed the Agreement of Subcontract ("Agreement of Subcontract") whereby Acumentrics agreed to supply GTE Government Systems with products and services pursuant to the CHS-2 program, including UPS products.

7.    Pursuant to the Agreement of Subcontract, Acumentrics agreed to deliver products in accordance with the schedules set forth in the purchase orders from GTE Government Systems. However, all V1 UPS products were to be delivered within 40 days and

all V2 UPS products were to be delivered within 120 days of the GTE Government Systems order.

8.    Pursuant to the Agreement of Subcontract, GTE Government Systems agreed to maintain a rolling back order of 750 V2 UPS products through December 31, 1998, even if the United States Government had not placed orders for these UPS Products. GTE Government Systems gave Acumentrics the option to receive payment of up to 85% of the value for products to be provided under each purchase order before Acumentrics delivered any such products.

9.    Pursuant to the Agreement of Subcontract, Acumentrics warranted that all supplies and services furnished pursuant to the Agreement of Subcontract would be free from defects in material and workmanship and conform to specification for a period of 60 months from the date of delivery or acceptance at GTE Government Systems. The warranty provided for the repair or replacement of equipment for any and all failures and defects in materials and workmanship. The warranty also required Acumentrics to repair or replace the equipment within 60 hours of being notified of the defect by GTE Government Systems.

10.    On or about September 8, 1999, following a corporate acquisition, GTE Government Systems changed its name to General Dynamics Government Systems Corporation ("GD Government Systems").

11.    On or about October 30, 2001, General Dynamics Communication Systems ("GD Communication Systems), a business unit of GD Government Systems, entered into a Letter of Agreement with Acumentrics ("Letter of Agreement"), whereby GD Communication Systems agreed to issue to Acumentrics a purchase order in the amount of $3,000,000 for various UPS and fuel cell based products. GD Communication Systems prepaid the $3,000,000 to

Acumentrics at its own risk even though GD Communication Systems did not have $3,000,000 worth of orders from the United States Government.

12.    Also pursuant to the Letter of Agreement (and like the Agreement of Subcontract), Acumentrics agreed to provide GD Communication Systems with a technical data package to be held in escrow containing all documentation required for the purpose of manufacturing or purchasing the products from a third party all products, including UPS products, purchased by GD Communication Systems in the prior twelve months or contained in the $3,000,000 purchase order.

13.    Although Acumentrics provided GD Communication Systems with a technical data package that supposedly contains the relevant UPS drawings and data, neither GD Communication Systems nor C4 Systems have been able to access certain essential files to confirm that Acumentrics has in fact satisfied its obligations.

14.    In or around early 2002, GD Communication Systems was renamed General Dynamics C4 Systems.

15.    On or about April 4, 2002, General Dynamics C4 Systems, Inc. was incorporated in the state of Delaware.

16.    On or about January 1, 2003, GD Government Systems transferred all assets relating to the business conducted by the General Dynamics C4 Systems business unit to General Dynamics C4 Systems, Inc.

17.    On or about August 19, 2003, Acumentrics and C4 Systems executed a Subcontract Amendment, whereby the parties agreed that C4 Systems would place a "last-time buy" with Acumentrics for multiple CHS-2 products under the 1997 Agreement of Subcontract.

18.    The Subcontract Amendment provided that all other terms and conditions of the 1997 Agreement of Subcontract remained in full force and effect, including Acumentrics' obligation to comply with all warranty obligations.

19.    Pursuant to the Subcontract Amendment, in August 2003 C4 Systems submitted a purchase order to Acumentrics for $2,018,690.02 worth of additional CHS-2 products. Again, C4 Systems, at its own risk, prepaid the majority of this purchase order prior to receiving the products from Acumentrics.

20.    Pursuant to the terms of the purchase order and the 1997 Agreement of Subcontract, Acumentrics was obligated to deliver the products to C4 Systems by December 22, 2003.

21.    Despite numerous inquiries from C4 Systems, Acumentrics has failed to deliver all the products ordered by C4 Systems in August 2003 in breach of the Subcontract Amendment and 1997 Agreement of Subcontract.

Breach of CHS-3 Contract Obligations

22.    As part of the October 30, 2001 Letter of Agreement, Acumentrics agreed to provide GD Government Systems with UPS products if GD Government Systems was awarded the CHS-3 contract by the United States Government.

23.    On or about December 4, 2002, C4 Systems requested that Acumentrics submit a Firm Fixed Price proposal for products to be supplied in support of CHS-3, including UPS products and power converter and conditioners ("PCC").

24.    On or about January 29, 2003, Acumentrics requested that C4 Systems execute a letter of agreement containing price quotations for UPS products and the additional engineering

effort required to modify the existing UPS products to comply with CHS-3 requirements that Acumentrics would provide to C4 Systems if it was awarded the CHS-3 contract.

25.    On April 14, 2003, C4 Systems bid on the CHS-3 contract.

26.    Based on the 2001 Letter of Agreement and ongoing discussions with Acumentrics regarding its production and supply of UPS products for CHS-3, C4 Systems initially identified Acumentrics as the supplier of UPS products in its CHS-3 bid.

27.    After C4 Systems submitted its bid, Acumentrics informed C4 Systems that Acumentrics would not honor its obligations to supply UPS products if C4 Systems received the CHS-3 contract.

28.    Prior to an award by the United States Government, C4 Systems informed the United States Government that Acumentrics would not supply UPS products if C4 Systems received the CHS-3 contract, but that C4 Systems would nonetheless meet the CHS-3 product requirements.

29.    On or about May 19, 2003, Richard Stein, on behalf of Acumentrics, also notified the United States Government in writing that Acumentrics would not supply UPS products if C4 Systems received the CHS-3 contract.

30.    On or about May 31, 2003, the United States Government awarded the CHS-3 program to C4 Systems.

31.    As a result of Acumentrics' refusal to provide C4 Systems with UPS products for the CHS-3 project, C4 Systems has been forced to develop, at significant cost and delay, its own design and production capability for UPS products to satisfy the CHS-3 product requirements.

Delivery of Defective Fuel Cells

32.    Pursuant to the October 30, 2001 Letter of Agreement, on or about March 22, 2002, GD Government Systems submitted, and Acumentrics accepted, a purchase order for four 2.5kW solid fuel cells.

33.    Because Acumentrics was unable to deliver the fuel cells as promised, on or about July 22, 2002, C4 Systems agreed to amend the purchase order to two fuel cells.

34.    Although Acumentrics provided C4 Systems with two fuel cells, they did not perform in accordance with the specifications required by C4 Systems.

35.    C4 Systems paid Acumentrics in full for the two fuel cells. Today, these two fuel cells are completely inoperable.

36.    On or about October 31, 2003, pursuant to a purchase order issued by C4 Systems, Acumentrics agreed to perform a comprehensive root cause analysis of the reasons for the fuel cell failures. C4 Systems paid Acumentrics to perform this analysis.

37.    To date, Acumentrics has failed to perform the analysis as specified, concluding only that the fuel cells "failed."

Failure to Deliver 7 Fuel Cells

38.    On or about March 6, 2003, pursuant to a purchase order issued by C4 Systems, Acumentrics agreed to deliver seven fuel cells at a cost of $100,000 each, for a total cost of $700,000.

39.    Acumentrics agreed to provide these seven fuel cells to C4 Systems by December 31, 2003.

40.    Despite the fact that C4 Systems again prepaid Acumentrics 90% of the purchase order amount— $630,000—Acumentrics has not yet delivered a single fuel cell to C4 Systems pursuant to the purchase order.

Solid State Energy Conversion Alliance Program

41.    On information and belief, Acumentrics submitted a bid to the Department of Energy ("DOE") to lead a team in a projected nine-year, $74 million Solid State Energy Conversion Alliance ("SECA") cost-share program to develop highly efficient and clean small-scale fuel cells.

42.    On information and belief, Acumentrics listed C4 Systems as a team member in its bid proposal to the DOE.

43.    C4 Systems' participation was crucial to Acumentrics' bid proposal, as C4 Systems was, on information and belief, identified as the team member who would repackage and commercialize the fuel cell products for certain types of commercial trucks.

44.    On or about April 25, 2003, Acumentrics was awarded the SECA contract.

45.    On April 25, 2003, Acumentrics sent a draft press release concerning its SECA award to C4 Systems to review and edit.

46.    The press release as drafted by Acumentrics identified C4 Systems as a member of the Acumentrics team, and described C4 Systems' participation in the project as "especially important."

47.    Also on April 25, 2003, Acumentrics and C4 Systems were in discussions regarding the potential sale of Acumentrics' UPS line of business to C4 Systems.

48.    Acumentrics requested payment of over $11,000,000 for its UPS line of business. After conducting its own preliminary analysis, C4 Systems informed Acumentrics that it valued Acumentrics' UPS line of business at a much lower amount.

49.    In response, Acumentrics told C4 Systems that its valuation was an insult and that C4 Systems should "disregard the press release" relating to the SECA program.

50.    Later that same day, Acumentrics notified C4 Systems that "General Dynamics' proposal to sub-contract services to Acumentrics for Phase I of SECA is hereby declined by Acumentrics and no funding will be forthcoming."

Acumentrics' Unfair and Deceptive Trade Practices

51.    Throughout the relationship, C4 Systems and its predecessors continuously agreed to a variety of contract changes, financial concessions, extraordinary payment terms, and proposed sales for the benefit of Acumentrics.

52.    In addition to prepaying purchase orders and maintaining a rolling backlog of products for which C4 Systems had not yet received orders, other examples of the good will exhibited by C4 Systems and its predecessors include the following:  In 1998, GTE Government Systems agreed to forgive $500,000 of Acumentrics debt in exchange for a 5% equity position in Acumentrics;  in 2000, GD Government Systems paid Acumentrics $500,000 for a single prototype fuel cell which, once delivered, did not perform as promised by Acumentrics;  C4 Systems agreed to purchase 200 power conditioners from Acumentrics—even though it did not need any power conditioners—for a total cost of $240,000.  Approximately all 200 power conditioners remain in C4 Systems' inventory today, with no potential of sale.

53.    In turn, Acumentrics intentionally took advantage of C4 Systems' good will, consistently leveraging C4 Systems' contractual obligation to provide UPS products for the CHS contracts into financial concessions.

54.    For example, Acumentrics threatened to breach its obligation to supply C4 Systems with UPS products for the CHS-3 project if C4 Systems did not purchase the entire UPS line of business from Acumentrics for its self valued amount of $11,000,000 as demanded.

55.    When C4 Systems refused to acquiesce to this financial blackmail, Acumentrics refused to provide C4 Systems with UPS products for CHS-3 and prohibited C4 Systems from participating in the SECA contract, both in breach of prior agreements. Ironically, Acumentrics continues to this day to advertise C4 Systems on its website as an "investor and alliance partner."

56.    On information and belief, after C4 Systems refused to be extorted into purchasing the UPS line of business, Acumentrics began soliciting offers from third parties to purchase the UPS line of business.

57.    On information and belief, even though Acumentrics informed C4 Systems that it would not supply UPS products pursuant to CHS-3, Acumentrics nonetheless told prospective purchasers of the UPS line of business that C4 Systems would purchase CHS-3 UPS products from the new owner. Even though Acumentrics knew that this was untrue, and that its existing CHS-2 UPS products did not meet the CHS-3 product requirements, on information and belief, Acumentrics made this representation to potential bidders in order to enhance the value of the UPS line of business.

## Count I

### Breach of Contract –
### Agreement of Subcontract, Letter of Agreement & Subcontract Amendment

58.    C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 57 above.

59.    Pursuant to the 2003 Subcontract Amendment and the 1997 Agreement of Subcontract, Acumentrics was obligated to deliver the products ordered pursuant to the "last time buy" by December 22, 2003.

60.    Acumentrics breached these contracts by failing to deliver the products by December 22, 2003.

61.    As a result of Acumentrics' breach, C4 Systems has been unable to meet its obligations to the United States Government and other customers.

62.    As a result of Acumentrics' breaches, C4 Systems has been harmed and will continue to suffer harm.

## Count II

### Breach of Contract – Agreement of Subcontract

63.    C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 62 above.

64.    Pursuant to the 1997 Agreement of Subcontract, Acumentrics warranted that all supplies and services furnished pursuant to the Agreement of Subcontract would be free from failures and/or defects in material and workmanship and conform to specification.

65.    On numerous occasions, the United States Government returned UPS products to GD Government Systems and C4 Systems because due to failures and/or defects in material and workmanship.

66.    As the UPS products were under warranty, GD Government Systems and C4 Systems requested that Acumentrics repair or replace said UPS products.

67.    Acumentrics failed to repair or replace the UPS products to GD Government Systems and C4 Systems within 60 hours of notification, or in a reasonable or timely manner.

68.    As a result of Acumentrics' breach, GD Government Systems and C4 Systems were unable to meet their obligations to the United States Government.

69.    As a result of Acumentrics' breach, C4 Systems has been harmed and will continue to suffer harm.

Count III

Breach of Contract – Letter of Agreement

70.    C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 69 above.

71.    Pursuant to the 2001 Letter of Agreement, Acumentrics agreed to provide GD Government Systems with UPS products if GD Government Systems received the CHS-3 contract by the United States Government.

72.    The United States Government awarded the CHS-3 contract to C4 Systems.

73.    Acumentrics has since refused to provide C4 Systems with UPS products for the CHS-3 contract.

74.    As a result of Acumentrics' breach, C4 Systems has been forced to develop, at significant cost and delay, the CHS-3 UPS and PCC products itself.

75.    As a result of Acumentrics' breach, C4 Systems has been harmed and will continue to suffer harm. As C4 Systems has already undertaken to develop UPS products, which will comply with the CHS-3 requirements, specific performance is no longer an option for

Acumentrics. Instead Acumentrics is liable for the costs and damages flowing from Acumentrics' breach of the Letter of Agreement.

Count IV

Breach of Contract – Purchase Orders for 2 Fuel Cells

76.    C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 75 above.

77.    Acumentrics agreed to manufacture and deliver two fuel cells to C4 Systems that would perform pursuant to certain specifications.

78.    The fuel cells provided by Acumentrics have not performed pursuant to the required specifications.

79.    C4 Systems paid Acumentrics in full for the two fuel cells.

80.    Acumentrics also agreed to perform a comprehensive root cause analysis of the reasons for the failure of two fuel cells and C4 Systems paid Acumentrics in full for this analysis.

81.    To date, Acumentrics has failed to perform this analysis.

82.    As a result of Acumentrics' breach, C4 Systems has been harmed and will continue to suffer harm.

Count V

Breach of Implied Warranty

83.    C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 82 above.

84.    C4 Systems relied upon Acumentrics' skill and judgment to design, manufacture and deliver two fuel cells that met C4 Systems' requirements.

85.    Acumentrics had reason to know the particular purpose for which C4 Systems was purchasing the two fuel cells.

86.    The two fuel cells provided by Acumentrics did not satisfy the ordinary purpose for which it was intended.

87.    The defects in the two fuel cells existed at the time they were delivered to C4 Systems.

88.    As a result of Acumentrics' breach, C4 Systems has been harmed and will continue to suffer harm.

<u>Count VI</u>

<u>Breach of Contract – Purchase Order for 7 Fuel Cells</u>

89.    C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 88 above.

90.    Acumentrics agreed to deliver seven fuel cells at a cost of $100,000 each, for a total cost of $700,000, to C4 Systems by December 31, 2003.

91.    C4 Systems has paid Acumentrics $630,000.

92.    Acumentrics has not yet delivered a single fuel cell to C4 Systems.

93.    As a result of Acumentrics' breach, C4 Systems has been harmed and will continue to suffer harm. C4 Systems is entitled to full reimbursement of the $630,000 that it has paid to Acumentrics.

<u>Count VII</u>

<u>Breach of Contract – SECA</u>

94.    C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 93 above.

95.    On information and belief, Acumentrics listed C4 Systems as a team member in its bid proposal to the DOE for the SECA contract.

96.    In exchange for the right to list C4 Systems as a team member in its bid proposal, Acumentrics agreed that C4 Systems would provide certain sub-contract services if Acumentrics was awarded the SECA contract.

97.    On information and belief, Acumentrics was awarded the SECA contract by the DOE.

98.    On information and belief, the DOE awarded the SECA contract to Acumentrics with the understanding that C4 Systems would provide certain services under the contract.

99.    On information and belief, Acumentrics would not have received the SECA award if it had not included C4 Systems in its bid proposal.

100.    In breach of its agreement with C4 Systems, Acumentrics has excluded C4 Systems from the SECA contract.

101.    On information and belief, Acumentrics' refusal to allow C4 Systems to participate in the SECA contract is based solely on the fact that C4 Systems would not purchase Acumentrics UPS line of business as demanded, even though the prospective purchase of the UPS line of business was completely unrelated to the SECA contract.

102.    As a result of Acumentrics' breach, C4 Systems has been harmed and will continue to suffer harm.

Count VIII

Declaratory Judgment – 2001 Letter of Agreement

103.    C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 102 above.

104.   On or about October 30, 2001, Acumentrics and GD Communication Systems executed a Letter of Agreement.  Affixed as Attachment B to the Letter of Agreement, the parties executed a Preferred Supplier Intent to Purchase Agreement which stated, in part, that Acumentrics would not enter into any contracts with any other entity to resell Acumentrics' fuel cell products for use in support of deployable military applications on a worldwide basis to include land, air, and sea based military projects originating from any country.

105.   Acumentrics claims that it is not bound by these agreements.

106.   C4 Systems asserts that Acumentrics is bound by these agreements.

107.   An actual controversy has arisen between the parties concerning the validity of these agreements.

108.   C4 Systems requests a declaration from this Court that these agreements are valid and binding on the parties, and that C4 Systems has the exclusive right to sell Acumentrics' fuel cell based products for use in support of deployable military applications on a worldwide basis to include land, air, and sea based military projects originating from any country.

<u>Count IX</u>

<u>Breach of Duty of Good Faith and Fair Dealing</u>

109.   C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 108 above.

110.   Implied in every contract and agreement between GD Government Systems or C4 Systems on the one hand, and Acumentrics on the other hand, is a duty of good faith and fair dealing.

111.   The actions taken by Acumentrics have had the effect of destroying or injuring C4 Systems' right to receive the fruits of the 1997 Agreement of Subcontract, 2001 Letter of

Agreement, March 22, 2002 purchase order, March 6, 2003 purchase order, and the 2003 Subcontract Amendment.

112.   As a result of Acumentrics' breaches, C4 Systems has been harmed and will continue to suffer harm.

<u>Count X</u>

<u>Breach of M.G.L. ch. 93A</u>

113.   C4 Systems incorporates by reference as if fully restated herein paragraphs 1 though 112 above.

114.   Acumentrics' actions, taken together, constitute unfair or deceptive acts or practices in the conduct of trade or commerce in violation of M.G.L. ch. 93A.

115.   The unfair or deceptive acts or practices committed by Acumentrics occurred primarily and substantially within the Commonwealth of Massachusetts.

116.   Acumentrics committed said acts or practices willfully and knowingly.

117.   As a result of Acumentrics' willful and knowing unfair or deceptive acts or practices, C4 Systems has been harmed and will continue to suffer harm.

118.   C4 Systems requests that it be awarded treble damages and its attorneys' fees.

WHEREFORE, Defendants General Dynamics Corporation and General Dynamics C4 Systems, Inc. respectfully request that this Court:

1. enter judgment in favor of GD Corporation on all claims asserted against it by plaintiff Acumentrics

2. enter judgment in favor of C4 Systems on all claims asserted against it by plaintiff Acumentrics;

3. enter judgment in favor of C4 Systems on its counterclaims against plaintiff and defendant in counterclaim Acumentrics;

4. award GD Corporation and C4 Systems their costs and attorneys' fees; and

5. grant GD Corporation and C4 Systems such additional relief as they may be able to demonstrate they are entitled to.

Respectfully submitted,

GENERAL DYNAMICS CORPORATION
and
GENERAL DYNAMICS C4
SYSTEMS, INC.,

By their attorneys,

Michael P. Boudett, BBO No. 558757
Carter D. Morse, Jr., BBO No. 636645
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210-2600
(617) 832-1000

Dated:  March 24, 2004

### CERTIFICATE OF SERVICE

I, Carter D. Morse, Jr., hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by HAND DELIVERY on March 24, 2004.

Carter D. Morse, Jr.